[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs appeal the decision of the Milford Planning and Zoning Board (board) granting the application of S.C. Communications, L.L.C. (S.C.) for site plan approval to construct a medical building. The facts pertinent to this appeal are as follows: CT Page 14229
On October 16, 1997, S.C. submitted plans to the board for site plan approval to develop a medical office building at 258 South Broad Street, Milford, a parcel owned by S.C. and located in a general business (G-B) zoning district. (Return of Record for Appeal [ROR], Item b: Planning Zoning Board Review Transmittal; ROR, Item k: Application for Site Plan Review). At the time of the application, the site contained an existing but vacant building, formerly used as a restaurant, and the site plan proposed to demolish the existing building and replace it with the medical office. (ROR, Item e: Memo from Milford Fire Department to S.C., Dated November 3, 1997; ROR, Item f: Memo Re: Milford Police Department, Traffic Division, Site Plan Approval, Dated November 17, 1997). The plans were subsequently submitted to the requisite municipal departments for review; (ROR, Item b); and each department approved the plans. (ROR, Item c: Memo from Health Department to S.C., Dated October 21, 1997; ROR, Item d: Memo from Director of Public Works to City Planner, Dated October 24, 1997; ROR, Item e; ROR, Item f; ROR, Item g: Memo from Sewer Commission to S.C., Dated November 18, 1997). In addition, by notification dated October 16, 1997, the board voted to exempt the site plan from coastal site plan review. (ROR, Item a: Notice of Exemption).
On November 25, 1997, the Subdivision and Special Permits Committee (committee) held a meeting at which S.C.'s site plan was reviewed. (ROR, Item i: Minutes of Subdivision and Special Permits Committee Held November 25, 1997). At the meeting the plaintiffs' attorney requested an opportunity to address the plaintiffs' concerns regarding the site plan, but the committee denied his request. (ROR, Item i, p. 3). The plaintiffs were, however, permitted to submit a copy of a written outline addressing such concerns. (ROR, Item h: Outline of Plaintiffs' Concerns Regarding Site Plan). At the time of the meeting, S.C. had not yet submitted a written application for site plan review — the written application was submitted to the board on December 1, 1997. (ROR, Item k).
On December 2, 1997, the full board held a regular meeting at which it voted to approve the application submitted for site plan review. (ROR, Item n: Verbatim Minutes of December 2, 1997 Meeting). Notice of the decision was mailed to S.C. by certified mail on December 4, 1997. (ROR, Item p: Letter of Approval of Site Plan, Including Photocopy of Receipt for Certified Mail). On December 26, 1997, the plaintiffs filed this appeal. General CT Page 14230 Statutes § 8-8 governs appeals taken from the decisions of a planning and zoning board to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc.v. Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559
(1985).
Under General Statutes § 8-8(a)(1), "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." The plaintiffs have alleged that they own 247 Broad Street in Milford, which is directly across the street from, and within 100 feet of, the parcel at issue. See Plaintiffs' Appeal, ¶¶ 4 12. The plaintiffs' have submitted a map of the subject properties and a certified copy of the deed filed in the Milford land records. See Plaintiffs' Exhibits 1 2. Accordingly, the court finds that the plaintiffs are aggrieved pursuant to General Statutes § 8-8.
In addition, under General Statutes § 8-8(b), an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published." The plaintiffs allege that the board heard and approved the site plan on December 2, 1997, and that notice of the decision was duly published in the New Haven Register on December 5, 1997. See Plaintiffs' Appeal, ¶ 11. Indeed, the board's notice of the decisions made at the December 2, 1997 meeting indicated that the notice would be published in the New Haven Register on December 5, 1997. (ROR, Item o: Notice of Decisions). Pursuant to General Statutes § 8-8(e),[1] service was made on Linda Stock, Acting Clerk of the board, Joan Pivoleit, Assistant City Clerk of the City of Milford, and Christopher J. Smith, attorney for S.C., on December 19, 1997. The plaintiffs' appeal of the board's approval of the site plan was therefore timely and served on the proper parties.
A site plan "is a physical plan showing the layout and the design of the site of a proposed use . . . It generally should indicate the proposed location of all structures, parking areas and open spaces on the plot and their relation to adjacent roadways and uses . . . As used in General Statutes § 8-3(g), a site plan is a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the CT Page 14231 regulations for that use. (Citation omitted; internal quotation marks omitted.) Barberino Realty Development Corp. v. Planning Zoning Commission, 222 Conn. 607, 613-14, 610 A.2d 1205 (1992).
"In reviewing and approving site plans the [board] acts in an administrative capacity . . . Furthermore, in reviewing site plans the [board] has no independent discretion beyond determining whether the plan complies with the applicable regulations . . . [and] is under a mandate to apply the requirements of the regulations as written." Norwich v. NorwalkWilbert Vault Co., 208 Conn. 1, 12-13, 544 A.2d 152 (1988). "In ruling upon a site plan application, the planning commission acts in its ministerial capacity, rather than in its quasi-judicial or legislative capacity . . . `If the plan submitted conforms to [the] regulations, the council has no discretion or choice but to approve it.' RK Development Corporation v. Norwalk,156 Conn. 369, 375-76, 242 A.2d 781 (1968); Forest Construction Co. v.Planning Zoning Commission, 155 Conn. 669, 674-75, 236 A.2d 917
(1967)." (Citation omitted.) Allied Plywood v. Planning ZoningCommission, 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied,194 Conn. 808, 483 A.2d 612 (1984).
"The standard of review on an appeal from a zoning board's decision . . . is well established." Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 205, 658 A.2d 559 (1995). The trial court must determine whether the boards action was "arbitrary, illegal or an abuse of discretion." Id., 205-06. "Courts are not to substitute their judgment for that of the board . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . .
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations . . . Where a zoning agency "does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the board's decision." Id. Indeed, General Statutes § 8-3(g) provides in relevant part that "[a] decision to deny or modify a site plan shall set forth the reasons for such denial or modification." The statute is silent, however, as to whether the board must provide reasons for granting a site plan. Because the board included no reasons for granting the CT Page 14232 application in its notice to S.C.; (ROR, Item p); the court searched the record for an adequate basis for the board's decision.
The plaintiffs appeal the decision of the board on the grounds that the board: (1) abused its discretion and acted illegally in granting S.C.'s application for site plan approval since the site plan fails to conform to the zoning regulations; (2) abused its discretion and acted illegally in failing to conduct a coastal site plan review as required by General Statutes § 22a-105; and (3) deprived the plaintiffs of their property rights without due process of law by denying the plaintiffs an opportunity to be heard regarding the application.
The plaintiffs argue that since the board acts in an administrative capacity in passing upon a site plan approval application, and thus has no discretion to deny approval if it conforms to the zoning regulations, it similarly has no discretion to grant an application for site plan approval where the site plan fails to conform to the zoning regulations. In both their memorandum in support of the appeal and their supplemental memorandum, the plaintiffs cite to numerous provisions of the Milford zoning regulations with which the plaintiffs assert the site plan fails to conform.
"The use of site plans in zoning matters is authorized by General Statutes 8-3(g)." TLC Development Inc. v. Planning Zoning Commission, 215 Conn. 527, 529, 577 A.2d 288 (1990). General Statutes § 8-3(g) provides, in relevant part: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations . . . A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning . . . regulations . . ." The standards and requirements in Milford for site plans and approval by the board are established in Article VII of the Milford zoning regulations. Section 7.1 of the regulations provides: "In all cases where these Regulations require Site Plan Approval, no permit shall be issued by the Zoning Enforcement Officer except in conformity with the site plan approved by the Planning and Zoning Board." Section 7.1.1.3 provides, in relevant part that "[i]n reviewing the application, the Board shall consider the objectives and standards as set forth in Section 7.1.3 herein." The plaintiffs argue that S.C.'s CT Page 14233 site plan fails to comply with several subsections of § 7.1.3, and therefore could not be approved. See Milford Zoning Regs., § 7.1.3.1 (discussing general considerations for size, location and character of proposed use); § 7.1.3.2 (discussing general considerations for traffic access); § 7.1.3.4 (discussing general adequacy of circulation system and parking areas); § 7.1.3.5 (discussing landscaping and screening generally); § 7.1.3.7 (discussing suitability and adequacy of utility systems generally). However, such "general objectives" found in § 7.1.3 of the regulations cannot serve as the basis for denying the application. See TLC Development,Inc. v. Planning Zoning Commission, supra, 215 Conn. 533
(finding that "general objectives" such as the "safe design" and "adequacy" of off-street parking "could not serve as the basis for denying [an] . . . application but could only have served as a reason for requiring a modification"). The provisions under § 7.1.3 cited by the plaintiffs are not "requirements already set forth in the zoning . . . regulations"; rather, they merely establish general guidelines for the board to follow, and lack any definitive standards. See TLC Development, Inc. v. Planning Zoning Commission, supra, 533; Hovhanessian v. Planning ZoningCommission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 439828 (December 2, 1991, Parker, J.) (7 C.S.C.R. 117). Thus, §§ 7.1.3.1, 7.1.3.2, 7.1.3.4, 7.1.3.5 and 7.1.3.7 could not be a basis for denying the application for approval of the site plan.
Similarly, § 5.1.1, providing the "general procedure" for complying with parking and loading regulations, and § 5.1.12, requiring parking and loading areas to be "suitably graded, surfaced, curbed, drained and maintained as deemed necessary by the Zoning Enforcement Officer and approved by the City Engineer to avoid hazards or nuisances of dust, erosion, damage to any buffer strip planting or storm water flow onto public streets," both cited by the plaintiffs, establish mere guides for the board to follow and lack definitive standards. Accordingly, the board did not abuse its discretion and act illegally in granting the application due to the failure of the application to conform to the zoning regulations cited above because the provisions could not be a basis for denying an application for site plan approval.
The plaintiffs also argue that the site plan fails to conform to other sections of the zoning regulations, which establish more definitive standards and requirements for compliance. See Milford Zoning Regs., § 3.11.4.2(4) (setting forth requirements for CT Page 14234 buffer strip for lots and buildings adjacent to residential districts); § 4.1.5 (setting forth requirements for distance of paved areas from street line and lot lines); § 5.1.4 (15) (establishing off-street parking requirements for professional offices); § 5.1.5.1 (establishing off-street loading requirements for office buildings); § 5.1.10.1 (establishing standards for the layout of parking spaces and aisles); § 5.1.10.2.2 (establishing requirements for placement of handicapped parking spaces); § 5.1.10.6 (establishing requirement of bumper strips to prevent vehicles from overhanging buffer strips or damaging constructions or landscaping); § 5.1.11.2 (establishing requirements for the distance of driveways from street intersections and from other driveways on the same lot); § 5.1.13 (discussing buffer strips and screening of parking areas); § 5.1.14.1 (establishing requirements for landscaping in and around parking areas). It is evident, however, that, pursuant to § 7.1.3.15 of the regulations governing site plan approval, "[t]he Board may waive . . . such requirements of . . . Section 7.1 and standards as set forth in the regulations governing uses requiring Site Plan Review as in its judgment of the special circumstances and conditions relating to a particular application, are not requisite in the interest of the public health, safety and general welfare. When making its determination as to the extent of variation from the standards set forth in [the] Regulations, the Board shall take into consideration the prospective character of the use, the interests of the City as a whole, and the purpose and intent of [the] Regulations."
The board reviewed S.C.'s site plan approval application and granted the application after consideration of each of the plaintiffs' concerns regarding nonconformity of the site plan with the zoning regulations. As indicated in the minutes of the board's December 2, 1997 meeting, the board addressed the concerns for nonconformity and determined either that the site plan complied with the applicable provisions or that the board had the discretion to waive strict compliance with such provisions. (ROR, Item n, pp. 2-10). Indeed, the board considered and responded to each of the concerns addressed in the plaintiffs' written submission to the board, and at the December 2, 1997 hearing indicated that it would defer to its review. (ROR, Item h: Outline of Plaintiffs' Concerns Regarding Site Plan; ROR, Item l: Comments and Responses to Plaintiffs' Concerns Regarding Site Plan; ROR, Item n, p. 2). CT Page 14235
"Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. This court must decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal . . . Upon review of the record, the board has acted fairly, with proper motives and upon valid reasons in applying the appropriate zoning regulations to the facts of the present case. The Board has not acted unreasonably, arbitrarily or illegally. Therefore, the plaintiffs' appeal on this basis is denied.
The plaintiffs' also argue in support of their appeal that the board abused its discretion and acted illegally in failing to conduct a coastal site plan review as required by General Statutes § 22a-105.
General Statutes § 22a-105(a) provides: "Coastal municipalities shall undertake coastal site plan reviews in accordance with the requirements of this chapter." Section 22a-109 (a) provides: "A coastal site plan shall be filed with the municipal zoning commission to aid in determining the conformity of a proposed building, use, structure, or shoreline flood and erosion control structure as defined in subsection (c), fully or partially within the coastal boundary, with the specific provisions of the zoning regulations of the municipality and the provisions of sections 22a-105 and 22a-106 . . ." Section 22a-109(b) permits the local zoning commissions to provide exemptions from the requirements of coastal site plan submission and review: "The zoning commission may by regulation exempt any or all of the following uses from the coastal site plan review requirements of this chapter: (1) Minor additions to or modifications of existing buildings or detached accessory buildings, such as garages and utility sheds; (2) construction of new or modification of existing structures incidental to the enjoyment and maintenance of residential property including but not limited to walks, terraces, driveways, swimming pools, tennis courts, docks and detached accessory buildings; (3) construction of new or modification of existing on-premise structures including fences, walls, pedestrian walks and terraces, CT Page 14236 underground utility connections, essential electric, gas, telephone, water and sewer service lines, signs and such other minor structures as will not substantially alter the natural character of coastal resources or restrict access along the public beach; (4) construction of an individual single-family residential structure except when such structure is located on an island not connected to the mainland by an existing road bridge or causeway or except when such structure is in or within one hundred feet of the following coastal resource areas: Tidal wetlands, coastal bluffs and escarpments and beaches and dunes; (5) activities conducted for the specific purpose of conserving or preserving soil, vegetation, water, fish, shellfish, wildlife and other coastal land and water resources; (6) interior modifications to buildings, and (7) minor changes in use of a building, structure or property except those changes occurring on property adjacent to or abutting coastal waters. Gardening, grazing and the harvesting of crops shall be exempt from the requirements of this chapter . . ." Milford has adopted the requirement for coastal site plan review in § 5.10.1 of the Milford zoning regulations, and has adopted the exemptions set forth in General Statutes § 22a-109(b) in § 5.10.2 of the regulations.
By notification dated October 16, 1997, the board, through the city planner, voted to exempt the site plan from coastal site plan review under § 5.10.2(4) of the zoning regulations, which corresponds to the exemption under General Statutes § 22a-109(b)(3), for "[c]onstruction of new or modifications of existing on-premises fences, walls, pedestrian walks and terraces, underground utility connections, essential electric, gas, telephone, water and sewer service lines, signs and such other minor structures as will not substantially alter the natural character of coastal resources as defined by Section 3 (7) of Public Act 79-535, or restrict access along the public beach." (ROR, Item a: Notice of Exemption). See Milford Zoning Regs., § 5.10.2(4). In exempting the site plan, the city planner noted that the project was a "re-use of developed property" through the raising of the "existing [restaurant] 
[construction of] a medical practice building — a reduction of nonconformity at 258 South Broad Street." (ROR, Item a).
The discretion to determine whether the site plan was exempt from coastal site plan review is granted to the city planner under General Statutes § 22a-109(h): "[N]o building permit or certificate of occupancy shall be issued for a building, use CT Page 14237 or structure subject to the zoning regulations of a municipality and located fully or partially within the coastal boundary . . . without certification in writing by the official charged with enforcement of such regulations that such building, use, [or] structure . . . has been reviewed and approved in accordance with the requirements of this chapter or is a use exempt from such review under regulations adopted by the zoning commission in accordance with this section." General Statutes § 22a-109(h); see also Milford Zoning Regs., § 7.1.1.1 ("Each application for a Site Plan Review approval shall be submitted to the City Planner . . ."). The city planner determined that S.C.'s proposal would simply be a re-use of a site that was previously used as a restaurant and already fully developed, and was thus exempt from coastal site plan review. This determination was within the discretion of the city planner. Accordingly, the board did not abuse its discretion or act illegally in failing to conduct a coastal site plan review. Therefore, the plaintiffs' appeal on this basis is denied.
Finally, the plaintiffs argue that the board deprived them of their property rights without due process of law by denying them an opportunity to be heard regarding the application at the committee meeting held on November 25, 1997. Although the plaintiffs concede that the committee's November 25, 1997 meeting "was not, in fact, a public hearing and may not be subject to all of the same requirements," the plaintiffs argue that "the basic principles of fairness and fundamental rules of natural justice should also apply to these proceedings." Plaintiffs' Brief in Support of Administrative Appeal, p. 21.
Connecticut General Statutes Sec. 8-3(g) does not require the zoning commission to hold a public hearing on a site plan application." Telker v. Planning Zoning Board, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 032227 (January 4, 1991, Fuller, J.) (6 C.S.C.R. 523). The plaintiffs have failed to identify any authority requiring the board to hold a public hearing on a site plan approval application, and in fact concede that no such hearing is required. Indeed, it is evident that a "determination of the level of due process where an administrative agency proposes to take away a position, permit or license, depends upon whether and to what extent the agency's action deprives the claimant of a property right. Bartlett v. Krause, 209 Conn. 352, 362-67
[551 A.2d 710 (1988)]. There is no automatic procedural due process right to a public hearing to object to the development of someone CT Page 14238 else's property. Due process requires that an individual be given an opportunity for a hearing before he is deprived of any significant property interest. Schwartz v. Town Plan and ZoningCommission, 168 Conn. 20, 24 [357 A.2d 495 (1975)]. The approvalof a site plan for someone else's property with or without apublic hearing is not deprivation of a significant propertyinterest." (Emphasis added.) Telker v. Planning Zoning Board, supra.
The plaintiffs cite to Carlson v. Fisher, 18 Conn. App. 488,503, 558 A.2d 1029 (1989), in support of the proposition that the board "should not be allowed to consider evidence submitted by . . . S.C . . . at the committee meeting, without granting the plaintiffs, and the public, an equal opportunity to examine the evidence and to offer evidence in explanation or rebuttal." Plaintiffs' Brief in Support of Administrative Appeal, p. 21. The plaintiffs' reliance on this argument is untenable for two reasons. First, the court in Carlson v. Fisher examined the issue of evidence submitted after a public hearing on a subdivision application which, unlike an application for approval of a site plan, requires a public hearing. This court did not address the issue in relation to evidence used by the board in its administrative consideration of a site plan. Moreover, while not required to do so, the board in the present case in fact permitted the plaintiffs to submit a written outline addressing their concerns regarding the nonconformity of the site plan; (ROR, Item h); and duly considered each concern. (ROR, Item l; ROR, Item n, p. 2). Accordingly, the plaintiffs' appeal on the basis that the board deprived them of their property rights without due process of law by denying them an opportunity to be heard is denied.
Pursuant to the foregoing, the plaintiffs' appeal is dismissed.
SO ORDERED:
Philip E. Mancini, Jr. Judge Trial Referee